IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

CHRISTOPHER V.[1],                                    No. 3:17-cv-01503-HZ

        Plaintiff,

    v.

COMMISSIONER, SOCIAL                          OPINION & ORDER
SECURITY ADMINISTRATION,

        Defendant.


Merrill Schneider
SCHNEIDER KERR & ROBICHAUX
P.O. Box 14490
Portland, Oregon 97293

    Attorney for Plaintiff

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this Opinion uses the same designation for a non-governmental party's immediate family member.

1 - OPINION & ORDER

Billy J. Williams
UNITED STATES ATTORNEY
District of Oregon
Renata Gowie
ASSISTANT UNITED STATES ATTORNEY
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-2902

Thomas M. Elsberry
SPECIAL ASSISTANT UNITED STATES ATTORNEY
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104-7075

      Attorneys for Defendant

HERNANDEZ, District Judge:

Plaintiff Christopher V. brings this action seeking judicial review of the Commissioner's final decision to deny disability insurance benefits (DIB) and supplemental security income (SSI). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1383(c)(3)). I reverse the Commissioner's decision and remand for additional proceedings.

## PROCEDURAL BACKGROUND

Plaintiff applied for SSI and DIB on January 21, 2014, alleging an onset date of January 15, 2008. Tr. 211-16, 217-23. His applications were denied initially and on reconsideration. Tr. 74-86, 134-38 (DIB Initial); 87-89, 139-42 (SSI Initial); 100-13, 145-55 (DIB Recon.); 114-31, 156-66 (SSI Recon.).

On April 21, 2016, Plaintiff appeared, with counsel, for a hearing before an Administrative Law Judge (ALJ). Tr. 34-73. On June 21, 2016, the ALJ found Plaintiff not disabled. Tr. 12-33. The Appeals Council denied review. Tr. 1-5.

## FACTUAL BACKGROUND

Plaintiff alleges disability based on depression, anxiety, post-traumatic stress disorder, shoulder problems, and back problems.  Tr. 238, 281.  At the time of the hearing, he was thirty-five years old.  Tr. 211 (showing date of birth).  He has a GED and past relevant work experience as a dishwasher and a construction laborer.  Tr. 63, 239.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. §§ 423(d)(1)(A), 1382c(3)(a).

Disability claims are evaluated according to a five-step procedure.  *See Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability).   The claimant bears the ultimate burden of proving disability.  *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity."  If so, the claimant is not disabled.  *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b).  In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments."  *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c).  If not, the claimant is not disabled.

In step three, the Commissioner determines whether plaintiff's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner]

acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity (RFC) to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can perform past relevant work, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets his burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through March 31, 2013, and had not engaged in substantial gainful activity since his alleged onset date of January 15, 2008. Tr. 17. At step two, the ALJ determined that Plaintiff has severe impairments of lumbar spine spasms, a possible right rotator cuff tear, anxiety, and depression. Tr. 18. However, at step three, the ALJ found that Plaintiff's impairments did not meet or equal, either singly or in combination, a listed impairment. Tr. 18-21.

At step four, the ALJ concluded that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b), but with several limitations including no

crawling; occasional performance of other postural tasks; no climbing ladders, ropes, or scaffolds; overhead reaching only rarely; avoidance of exposure to extremes of temperature, vibration, and other workplace hazards; occasional interaction with supervisors and co-workers; and only incidental contact with the general public.  Tr. 21.

With this RFC, the ALJ determined that Plaintiff is unable to perform any of his past relevant work.  Tr. 25.  However, at step five, the ALJ determined that Plaintiff is able to perform jobs that exist in significant numbers in the economy such as electronics worker and small products assembler.  Tr. 26-27.  Thus, the ALJ determined that Plaintiff is not disabled.  *Id.*

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings are based on legal error or are not supported by substantial evidence in the record as a whole.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* (internal quotation marks omitted).  The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision.  *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007).  "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed."  *Vasquez*, 572 F.3d at 591 (internal quotation marks and brackets omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's") (internal quotation marks omitted).

/ / /

DISCUSSION

Plaintiff contends that the ALJ made the following errors: (1) improperly rejected the opinions of medical sources; (2) failed to find several impairments severe at step two; (3) improperly rejected his subjective limitations testimony; and (4) failed to conduct an adequate analysis at step five. Defendant concedes that the ALJ erred in his consideration of the opinions of state agency consultant Disability Determination Services (DDS) physicians because the ALJ purported to give their opinions great weight but omitted their assessments regarding Plaintiff's upper extremity and bilateral handling and fingering limitations from the RFC. Def.'s Mem. & Mot. for Remand 4, ECF 21. Based on this concession, Defendant moves to remand for additional proceedings. Plaintiff contends that other non-conceded errors warrant remand for an award of benefits.

I. Defendant's Argument Regarding the Limitation of Remand

Defendant argues that while remand is appropriate, the remand should be limited to Plaintiff's SSI Title XVI claim and that the ALJ's decision as to the DIB Title II claim should be affirmed. Defendant relies on the ALJ's discussion of the DDS physician opinions. In discussing the credibility of Plaintiff's symptom testimony, the ALJ recited much of the medical evidence and included this paragraph:

> On May 5, 2014, state agency consultants indicated that the claimant had no severe impairments and that there was insufficient evidence to determine whether the claimant had been disabled prior to his date last insured for Title 2 purposes. [Tr, 86, 99]. On October 27, 2014, state agency consultants reconsidered the claimant's applications and confirmed the initial determination that the claimant had no severe impairments prior to the date last insured. [Tr. 109]. For Title 16 purposes, state agency consultants were of the opinion the claimant had a severe impairment from anxiety and personality disorders and indicated he could perform work of a light exertional demand level with occasional postural tasks, limitations

in reaching, and without more than occasional changes and limited social interactions. [Tr. 128]. *The undersigned gives great weight to the opinion of the state agency consultants regarding the claimant's residual functional capacity on Title 16 reconsideration.* Although the consultants did not offer an opinion of the severity of the claimant's back and shoulder, the undersigned has drawn all inferences in favor of the claimant and accepted the opinion that the physical functionality described by state agency consultants is supported by the consultative examination performed by John Ellison, M.D. [Tr. 512-14]. The opinion of state agency consultants regarding the claimant's mental function was also given great weight as consistent with the consultative examinations results offered by Dr. Starbird. [Tr. 515-20].[2]

Tr. 24-25 (emphasis added).

Defendant focuses on the May 5, 2014 and October 27, 2014 reports on the Title II DIB claim. Defendant observes that as the ALJ noted, both reports indicated that Plaintiff had no severe impairments and there was insufficient evidence to determine whether Plaintiff was disabled before his date of last insured for the Title II claim. Defendant argues that "[t]he ALJ did not reject these opinions nor has Plaintiff challenged these opinions." Def.'s Mem & Mot. to Remand 4. Defendant acknowledges that the ALJ did not explicitly accept these opinions. *Id.* at 4-5. But, Defendant argues that the ALJ's acceptance is supported by reasonably drawn inferences and thus must be upheld. Based on this, Defendant argues that only the SSI Title XVI claim should be remanded.

Plaintiff argues that Defendant's position lacks merit. As Plaintiff notes, and as seen in the italicized portion of the ALJ's discussion above, the ALJ expressly adopted only the Title XVI opinions. He made no comment about the Title II claim, meaning he made no affirmative finding that the Title II claim lacked sufficient evidence. Plaintiff further notes that had the ALJ

---

[2] The ALJ cited the report by Dr. Starbird as Exhibit 10F, but the report is actually Exhibit 8F and found at pages 515-21 of the Administrative Record.

intended to reject the Title II claim based on these opinions, he would have denied the Title II claim at step two because those consultants opined that Plaintiff had no severe impairments in regard to the Title II claim. The ALJ would have then limited the remainder of his opinion to the Title XVI claim and its relevant time period. Because he did not do so, Plaintiff asserts, Defendant's argument is unpersuasive.

The ALJ's opinion is unclear. The ALJ's express endorsement of the Title XVI opinions arguably indicates that he did not similarly endorse the Title II opinions. And, given that the ALJ made no further attempt to distinguish between the Title II and Tile XVI claims, Plaintiff's argument carries more weight. However, because I otherwise determine that the case should be remanded for further proceedings, I do not finally resolve the issue. Nonetheless, given the ambiguity of the decision, I reject Defendant's invitation to limit the remand to the Title XVI claim. On remand, the ALJ should more thoroughly address the difference in the claims should that be relevant to the ALJ's decision.

## II. Plaintiff's Credibility

The ALJ is responsible for determining credibility. *Vasquez*, 572 F.3d at 591. Once a claimant shows an underlying impairment and a causal relationship between the impairment and some level of symptoms, clear and convincing reasons are needed to reject a claimant's testimony if there is no evidence of malingering. *Carmickle v. Comm'r*, 533 F.3d 1155, 1160 (9th Cir. 2008) (absent affirmative evidence that the plaintiff is malingering, "where the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he complains, an adverse credibility finding must be based on 'clear and convincing reasons'"); *see also Molina v. Astrue*, 674 F.3d 1104, 1112 (9th

Cir. 2012) (ALJ engages in two-step analysis to determine credibility: First, the ALJ determines whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged"; and second, if the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give "specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms.") (internal quotation marks omitted).

When determining the credibility of a plaintiff's complaints of pain or other limitations, the ALJ may properly consider several factors, including the plaintiff's daily activities, inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and relevant character evidence. *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). The ALJ may also consider the ability to perform household chores, the lack of any side effects from prescribed medications, and the unexplained absence of treatment for excessive pain. *Id.*; *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) ("The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.") (internal quotation marks omitted).

As the Ninth Circuit explained in *Molina*;

In evaluating the claimant's testimony, the ALJ may use ordinary techniques of credibility evaluation. For instance, the ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct, unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and whether the claimant engages in daily

activities inconsistent with the alleged symptoms[.] While a claimant need not
vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit
a claimant's testimony when the claimant reports participation in everyday
activities indicating capacities that are transferable to a work setting[.] Even
where those activities suggest some difficulty functioning, they may be grounds
for discrediting the claimant's testimony to the extent that they contradict claims
of a totally debilitating impairment.

*Molina*, 674 F.3d at 1112-13 (citations and internal quotation marks omitted).

The ALJ set forth the proper two-step analytical framework. Tr. 21. Then, the ALJ

described several of Plaintiff's allegations. Tr. 21-22 (noting that Plaintiff alleges that he is

impaired by back and neck problems and severe anxiety and depression, that he experiences

panic attacks, that he can lift thirty-five pounds, can stand for four hours before needing to sit

down, can walk three hours before needing to rest, cannot pay attention for extended periods,

follows written and spoken instructions poorly, gets along poorly with authority figures, has been

frequently terminated from work due to problems getting along with others, and cannot tolerate

stress). The ALJ next discussed some of the medical evidence regarding Plaintiff's spine and

shoulder conditions, as well as his depression and anxiety. Tr. 22. The ALJ noted that Plaintiff

provided no evidence for a portion of 2012 or any part of 2013, but resumed mental health

treatment in January 2014. *Id.* The ALJ continued discussing medical evidence regarding

Plaintiff's mental health treatment. Tr. 23.

Then, the ALJ wrote that while Plaintiff's "medically determinable impairments could

reasonably be expected to cause the alleged symptoms," Plaintiff's "statements concerning the

intensity, persistence and limiting effects of these symptoms are not entirely consistent with the

medical evidence in the record for the reasons explained in this decision." *Id.* Following this

statement, the ALJ discussed Global Assessment of Functioning (GAF) scores. Tr. 23-24. Then,

he reviewed medical source opinions.  Tr. 24-25.  After that, he discussed whether Plaintiff could perform any past relevant work.  Tr. 25.

The problem with the ALJ's decision is that "reasons explained in this decision" are never clearly identified.  The ALJ failed to expressly set forth any reasons for why he did not credit Plaintiff's subjective testimony and failed to identify any conflicts between Plaintiff's testimony and the medical evidence.  While some of the medical evidence noted by the ALJ could be viewed as conflicting with Plaintiff's testimony, the ALJ leaves it to guesswork to determine exactly what he relied on in reaching his conclusion.  Moreover, while an ALJ may consider objective medical evidence in determining a claimant's credibility regarding subjective symptom testimony, the ALJ may not reject such testimony solely because it is unsubstantiated by the objective medical evidence.  20 C.F.R. §§ 404.1529(c), 416.929(c); *Rollins v. Massanari*, 261 F.3d 853, 856, 857 (9th Cir. 2001) ("Once a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain").  Here, the ALJ fails to sufficiently explain his credibility determination and thus, it is unsupported by clear and convincing reasons.

III.  Medical Source Opinions

A.  Examining Psychologist Dr. Starbird

"'To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence.'" *Ryan v. Comm'r*, 528 F.3d 1194, 1198 (9th Cir. 2008) (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)) (brackets in *Ryan*).  "'If a treating or examining doctor's opinion is contradicted by another

doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence.'" *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting *Ryan*, 528 F.3d at 1198).

Jane Starbird, Ph.D., examined Plaintiff in April 2014. Tr. 515-20. She conducted a clinical interview of Plaintiff, performed a mental status examination, and reviewed records. Tr. 515. In the section of her report discussing the mental status exam and behavioral observations, Dr. Starbrid wrote:

> [Plaintiff's] mood was poor. During the course of the interview he was on the verge of frustration. He was emphatic about many different things. He was resentful that he had been treated poorly by parents, teachers, bosses and others. He did not exhibit signs of depression but he did exhibit signs of impulsivity and anxiety. He interrupted the process of the interview many times. His affect was consistent with the content of speech. During the course of the evaluation he described his difficulty coping with losing custody of his daughter, his efforts with Vocational Rehabilitation, his susceptibility to arguing with people and other complaints. His speech was fast paced and slightly pressured. Otherwise it was within normal limits for intelligibility, fluidity, volume, and tone. There were no signs of bizarre mentation or psychotic processes. Thinking was not well organized. Concentration and focus were poor. His insight is limited. His judgment is poor.

Tr. 517-18.

The ALJ summarized Dr. Starbird's report. Tr. 23. He then observed that other than stating that Plaintiff was capable of managing his own finances, Dr. Starbird offered no assessment of Plaintiff's mental residual functional capacity. *Id.* The ALJ did not further consider Dr. Starbird's opinions.

Plaintiff argues that the ALJ failed to offer specific and legitimate reasons to reject Dr. Starbird's opinions. Plaintiff contends that although Dr. Starbird did not offer a mental RFC, she still opined that Plaintiff had serious limitations and the ALJ's failure to consider them amounts

to an implicit rejection of those limitations. Defendant argues that the ALJ did not reject Dr. Starbird's opinion. Additionally, Defendant states that Plaintiff fails to point to any inconsistency between Dr. Starbird's observations and the ALJ's RFC finding. In reply, Plaintiff contends that Dr. Starbird's observed limitations of Plaintiff are inconsistent with the ALJ's RFC in terms of social functioning and unorganized thinking, poor concentration and focus, limited insight, and poor judgment.

The ALJ appears to have ignored Dr. Starbird's observations because Dr. Starbird did not complete a mental RFC. I agree with Plaintiff that this is an implicit rejection of her opinion. Certainly, an express mental RFC allows the ALJ to more easily evaluate specific limitations. But, at a minimum, Dr. Starbird's opinion that Plaintiff's "[c]oncentration and focus were poor" is specific and should have been discussed more thoroughly by the ALJ. Thus, I agree with Plaintiff that the ALJ erred in disregarding Dr. Starbird's opinion, at least as to Plaintiff's poor concentration and focus.

B. Non-Examining Physicians

As indicated above, the ALJ gave "great weight" to the opinions of the DDS physicians which were offered in the context of reconsidering Plaintiff's Title XVI claim. Tr. 24-25. As described by the ALJ, those opinions were that Plaintiff had a severe anxiety impairment and personality disorders and, in regard to his mental health, could tolerate no more than "occasional changes and limited social interactions" in the workplace. *Id.* at 24.

Plaintiff argues that the ALJ erred because the DDS physicians found that Plaintiff had marked difficulties in maintaining social functioning and although the ALJ stated he was giving these findings great weight, he failed to account for this limitation in the RFC. Defendant

responds that the ALJ's RFC limitations to work requiring only occasional interaction with supervisors and co-workers, and to only incidental contact with the general public, Tr. 21, is consistent with the DDS physicians' opinions. And, Defendant asserts, the RFC is consistent with the regulatory definition of "marked." Plaintiff argues that a limitation to occasional contact with supervisors and co-workers does not account for a marked limitation in social function and additionally, that the record shows that even with occasional contact, Plaintiff responds inappropriately to supervision.

The DDS physicians' opinions assess Plaintiff as having a marked level of difficulty in maintaining social functioning. Tr. 122. Later, however, they assess him as having a moderate limitation in his ability to accept instructions and respond appropriately to criticism from supervisors and having a moderate limitation in the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. Tr. 128. However, the opinions also note that Plaintiff has a "long history of poor social behavior [and] assaultive behavior." *Id.* The opinions observe that while Plaintiff has been reportedly free of meth abuse for about a year and has been enrolled in classes during that time, he was nonetheless "on the verge of frustration just doing the psych interview." *Id.* Thus, "[h]e would benefit from work that does not require more than occasional social interactions." *Id.*

The crux of Plaintiff's argument is that the ALJ erred by adopting the opinions of the DDS physicians regarding Plaintiff's social functioning but then omitting the limitations from the RFC. The opinions expressly state that generally, Plaintiff has a marked limitation in social functioning, but then in addressing workplace interactions, they state that he has moderate limitations in regard to supervisors or coworkers. Thus, the RFC's limitations to occasional

interaction with supervisors and co-workers is consistent with the DDS physicians' opinions.

Additionally, I agree with Defendant that the occasional limitation is not inconsistent with the

definition of "marked": "Your functioning in this area independently, appropriately, effectively,

and on a sustained basis is seriously limited."  20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00F(2)(d).

Thus, the ALJ did not err.

### C.  Undetermined Medical Source Opinions

#### 1.  Legacy Medical Group Powell Butte

On March 2, 2016, "Legacy Medical Group Powell Butte" wrote a "To Whom it May

Concern" letter regarding Plaintiff.  Tr. 657.  There, the unidentified author stated:

> Mr. Van Dam has ongoing struggles with his mental health and is currently unable
> to participate in work at this time.  He has trouble with concentration, difficulty
> following instructions, difficulty staying on task.  He becomes easily frustrated.
> He is struggling in his studies at school due to these ongoing issues.  He
> experiences significant anxiety which is also contributing to his difficulties.  He
> has a current presumptive diagnosis of bipolar disorder.

*Id.*  The ALJ assigned no weight to the opinions in this letter because it was unsigned, precluding

the ALJ from determining the relationship between the author and Plaintiff or whether the author

was an acceptable medical source.  Tr. 24.

Plaintiff argues that the ALJ erred in giving the opinions in the letter no weight because

regardless of whether it was signed or not, the ALJ must still evaluate it.  Plaintiff notes that on

the same day the letter was written, Plaintiff was seen by Dr. Laura E. Ostrom, D.O.  Tr. 657-62.

Chart notes indicate that Dr. Ostrom had been Plaintiff's primary care provider since at least July

2014.  Tr. 701.  Plaintiff asserts that it is clear that whoever wrote the March 2, 2016 letter was

familiar with Plaintiff's impairments and limitations.  Further, logic would dictate that it was

written by Dr. Ostrom who had seen Plaintiff that day.  In response, Defendant argues that the ALJ was justified in giving the letter no weight because he could not discern the relationship or the status of the author.

I agree with Plaintiff.  The fact that the letter was written the same day as Plaintiff saw Dr. Ostrom strongly suggests that she wrote it.  While an ALJ may not need to assign weight to a truly anonymous chart note or letter opinion, this letter, having likely been authored by Dr. Ostrom, should have been addressed by the ALJ as the opinion of the treating physician.  Failure to consider it in that context was error.

## 2.  Vocational Rehabilitation Services

In August 2014, the Office of Vocational Rehabilitation Services (VRS) stated that Plaintiff could not perform any physically demanding jobs.  Tr. 484.  This determination was based on a review of medical records from Legacy Powell Butte Clinic and Plaintiff's statements, "clarified by Disability Handbook."  *Id.*  Plaintiff was noted to have limited sitting ability of one hour without a break, limited ability in standing and walking (two to three hours without rest), and difficulty bending, twisting, squatting, kneeling, crawling, and walking on "level/uneven surfaces."  *Id.*  He was noted to be unable to lift more than fifteen to twenty pounds.  *Id.*

Additionally, VRS noted that Plaintiff experiences severe pain and decreased grip strength in his hands, making it difficult to form a fist, grasp objects, or perform other manual tasks.  *Id.*  This information was also based on the Legacy Powell Butte Clinic records and Plaintiff's "statement clarified by Disability Handbook."  *Id.*  Finally, it was noted that Plaintiff needed to be able to move around during the day, have a distraction-free work environment, and have supportive coworkers and supervisors. Tr. 485.

The ALJ gave this opinion no weight because it "was not clearly given by an acceptable medical source and it is difficult to discern the relationship of the author to the claimant." Tr. 24. Plaintiff argues that the ALJ erred because an opinion from VRS is highly relevant to a disability determination given the nearly identical issues. Plaintiff contends that even if the ALJ is correct that the opinion is not from an acceptable medical source, the ALJ still failed to provide appropriate reasoning for rejecting what would be considered a lay opinion. In response, Defendant simply relies on the ALJ's reasoning and argues that this was a sufficient basis for giving the opinion no weight.

I agree with Plaintiff. The chart entry indicates that this statement was part of an eligibility determination for services from VRS, performed by Eric Stelmakh. Tr. 484-84. In contrast to the letter from Legacy Medical Group Powell Butte, this chart note is not from an anonymous source. While the ALJ may be correct that Stelmakh was not an acceptable medical source, the ALJ was wrong to accord the statement no weight simply for that reason. Instead, at a minimum, the ALJ should have treated the opinion as that of a lay witness. The ALJ is required to consider lay witness opinions and can reject them only for reasons that are germane to the opinion. *Molina*, 674 F.3d at 1114 ("Lay testimony as to a claimant's symptoms or how an impairment affects the claimant's ability to work is competent evidence that the ALJ must take into account."); *Valentine*, 574 F.3d at 694 (ALJ must give reasons "germane to the witness" when discounting the testimony of lay witnesses). Moreover, the fact that the ALJ could not discern the exact nature of the relationship of Stelmakh to Plaintiff may be a consideration in how to weigh to the statement, but it is not a reason to fail to examine the statement in the first instance, especially given that an August 15, 2014 record suggests that Stelmakh is a counselor,

Tr. 483, and opinions offered by VRS may be highly relevant to a social security disability determination. Even considering this as lay opinion, the ALJ was required to provide reasons germane to the opinion in support of rejecting it. The ALJ failed to do so.

## IV. Step Two Severe Impairments

Plaintiff alleges that the ALJ erred by failing to find several of his impairments severe at step two. The ALJ considers the severity of the claimant's impairment(s) at step two. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A severe impairment is one that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). "Basic work activities" are the abilities and aptitudes necessary to do most jobs, including physical functions such as walking, standing, sitting, and lifting, and mental functions such as understanding, carrying out, and remembering simple instructions. 20 C.F.R. §§ 404.1522(b), 416.922(b). The step two severity determination is expressed "in terms of what is 'not severe.'" *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). The ALJ is required to consider the claimant's subjective symptoms, such as pain or fatigue, in determining severity. *Id.* Importantly, as the Ninth Circuit noted, "the step-two inquiry is a de minimis screening device to dispose of groundless claims." *Id.* (citing *Yuckert*, 482 U.S. at 153-54).

"[T]he severity regulation is to do no more than allow the [Social Security Administration] to deny benefits summarily to those applicants with impairments of a minimal nature which could never prevent a person from working." SSR 85-28, available at 1985 WL 56856, at *2 (internal quotation marks omitted). Therefore, "an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.'" *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005)

(quoting SSR 85-28). The court's task in reviewing a denial of benefits at step two is to "determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [the claimant] did not have a medically severe impairment or combination of impairments." *Id.*

The ALJ found that Plaintiff had severe impairments of lumbar spinal spasms, a possible right rotator cuff tear, anxiety, and depression. Tr. 18. The ALJ considered whether Plaintiff's carpal tunnel syndrome was a severe impairment but determined it was not because there was insufficient evidence to establish that it was a medically determinable impairment. Tr. 19. The ALJ explained that a claimant's assertions alone are insufficient to establish the existence of a medically determinable impairment and cannot sustain a finding of an impairment without support from medical signs and laboratory findings. *Id.* (citing 20 C.F.R. §§ 404.1528, 404.1529(b), 416.928, 416.921(b)). The ALJ found that each of the notations regarding carpal tunnel syndrome in the medical evidence indicated that the diagnosis was based entirely on Plaintiff's subjective symptom reporting. *Id.* (noting there were no nerve conduction studies, electromyelograph results, surgical notes, or imaging students to confirm the diagnosis). The ALJ did not discuss any other impairment at step two.

Plaintiff argues that his carpal tunnel syndrome is a severe impairment and further, that the ALJ failed to find the following impairments severe: degenerative disc disease of the spine, attention deficit hyperactivity disorder (ADHD), and hepatitis C. I address these in turn.

The medical evidence Plaintiff cites in support of his contention that carpal tunnel syndrome should be found severe at step two includes a May 20, 2014 chart note from Dr. Ostrom diagnosing him with bilateral carpal tunnel syndrome. Tr. 405-06. While his right and

left wrists had a normal range of motion, he had positive Tinel's sign and Phalen's maneuver[3] bilaterally. *Id.* Her plan was to refer Plaintiff to orthopedic surgery. Tr. 405. The August 2014 VRS report stated Plaintiff suffered from carpal tunnel syndrome, making it difficult for him to form a fist, grasp objects, or perform other manual tasks. Tr. 484. This opinion was based on medical records from Legacy Powell Butte Clinic and Plaintiff's statement. *Id.* Later, in October 2014, Plaintiff had a consultative examination by John Ellison, M.D., where Plaintiff complained of numbness, tingling, and weakness in his hands. Tr. 512. The chart notes state that Plaintiff did not believe that he had been "tested" for carpal tunnel syndrome but was to see a neurologist. *Id.* Plaintiff exhibited a positive Tinel's sign and Phalen's maneuver bilaterally upon physical examination. Tr. 513. Dr. Ellison opined that Plaintiff had probable bilateral carpal tunnel syndrome. *Id.* In his consultative psychological examination with Dr. Starbird, Plaintiff reported experiencing symptoms of carpal tunnel syndrome. Tr. 516-17. On October 17, 2014, Plaintiff saw Dr. Ostrom regarding his ongoing hair loss and possible alopecia areata. Tr. 687-88. While his carpal tunnel syndrome symptoms do not appear to have motivated the visit, Dr. Ostrom did indicate that Plaintiff was to look for smaller braces that he could wear under welding gloves. *Id.* Two other chart notes mention Plaintiff's carpal tunnel syndrome but do not indicate that any examination or treatment occurred. Tr. 689 (Sept. 18, 2014 chart note listing carpal tunnel syndrome, left, as a diagnosis); Tr. 702 (July 30, 2014 chart note indicating that Plaintiff was referred to Legacy Behavioral Health Services to obtain "evidence-based psychological

---

[3] "Tinel's sign is a cutaneous tingling sensation produced by pressing on or tapping the nerve trunk that has been damaged or is regenerating following trauma." *Sepulveda v. Astrue*, No. 06–08164, 2008 WL 4351843, at *4 n.4 (C.D.Cal. Sept. 19, 2008) (citing Taber's Cyclopedic Medical Dictionary, p. 2192 (20th ed. 2005)). "Phalen's test is a maneuver used in the physical diagnosis of carpal tunnel symptoms." *Id.* at n.5.

interventions to help improve management of carpal tunnel syndrome," noted to be his primary medical diagnosis, and his "outbursts of anger," noted to be his secondary diagnosis).

The ALJ failed to note the two medical records finding positive Tinel's sign and Phalen's maneuver. Several judges in this district consider these to be objective tests. *See*, *e.g.*, *Scott v. Berryhill*, No. 6:16-CV-01596-PK, 2017 WL 6420791, at *13 (D. Or. Nov. 17, 2017), (Judge Papak including Tinel's and Phalen's in a list of "objective testing"), *adopted by J. Simon*, 2017 WL 6419287 (D. Or. Dec. 15, 2017); *Igou v. Comm'r*, No. 1:16-CV-00747-MO, 2017 WL 1458199, at *4 (D. Or. Apr. 24, 2017) (Judge Mosman referring to positive Tinel's signs as "objective medical evidence"); *Alagoz v. Colvin*, No. 6:12-CV-00902 RE, 2014 WL 273141, at *2 (D. Or. Jan. 23, 2014) (Judge Redden referring to a positive Tinel's sign in a list of "multiple objective medical findings"); *Jackson v. Astrue*, No. 08-CV-6177-JE, 2009 WL 2629667, at **9, 16 (D. Or. Aug. 24, 2009) (Judge Jelderks referring to positive Tinel's sign and Phelan's test in a list of "neurological testing [which] yielded a number of abnormal objective findings"); *but see Aguirre v. Comm'r*, No. 6:16-CV-01333-MA, 2017 WL 4697072, at *7 (D. Or. Oct. 19, 2017) (describing Tinel's sign and Phalen's test as "screening tests that rely upon Plaintiffs subjective reporting of pain or tingling.").

I concur with the majority of the judges. Thus, because there is objective medical evidence of the existence of carpal tunnel syndrome in the record, the ALJ was wrong to summarily reject it as a severe impairment at step two.

The record as to Plaintiff's degenerative disc disease shows that in April 2014, Plaintiff complained of radicular pain in his right arm, burning pain between his shoulder blades, and weakness and numbness in his hands. Tr. 410. Cervical and thoracic spine x-rays ordered by Dr.

Ostrom and obtained in May 2014 showed mild degenerative disc disease at C6-7 and mild degenerative disc disease at the mid-thoracic spine.  Tr. 539.  In his October 18, 2014 report, examining physician Dr. Ellison noted that Plaintiff had lumbar spine x-rays on October 3, 2014 which were normal, as were x-rays of his right shoulder.  Tr. 512.  Plaintiff reported a previous 2004 right shoulder and low back injury, resulting in burning pain in his posterior right shoulder with difficulty raising his arm overhead as well as chronic low back pain and limited range of motion.  Tr. 512.  On physical examination, he had tight paraspinal muscles, tenderness over the lumbosacral joint, and a positive straight leg raise.  Tr. 513.  He walked stiffly.  *Id.*  He had normal motor and muscle strength throughout.  *Id.*

Because there was objective evidence of degenerative disc disease, albeit characterized as mild, the ALJ should have considered whether the cervical and thoracic spine x-rays warranted something more than lumbar spinal spasms as a severe impairment at step two.  Further, the ALJ must consider Plaintiff's subjective symptoms at step two once there are "signs, symptoms, and laboratory findings showing anatomical, physiological, or psychological abnormalities."  Tr. 18 (citing 20 C.F.R. §§ 404.1508, 416.980; SSR 96-4p).  The ALJ erred by failing to consider whether Plaintiff's spine impairment extended to his cervical and thoracic discs.

Next, as to his ADHD, Plaintiff cites to a psychiatric evaluation performed by Psychiatric Mental Health Nurse Practitioner Sarah Sharaf in September 2011.  Tr. 459-62.  There, she noted that Plaintiff reported having academic difficulty and disruptive behaviors as a youth, with current symptoms of "distractible, interrupts people frequently, talkativeness, high energy, racing thoughts, difficulty sustaining attention ([client] shares that he has to re-read written material multiple times to retain/comprehend information), impulsivity, difficulty sitting still, feeling

easily bored and sleep disturbance." Tr. 461. Based on Plaintiff's self-report, Nurse Practitioner Sharaf characterized these symptoms as consistent with a diagnosis of Attention Deficit Hyperactivity. *Id.* She listed ADHD as one of Plaintiff's Axis I diagnoses. *Id.*

Plaintiff also cites to the August 2014 VRS report which included ADHD as an impairment. Tr. 485. This appears to be based on Plaintiff's self-report of symptoms. *Id.* And, about three weeks later, VRS stated that "[i]nformation from Disability Services should be secured since there is no documentation of ADHD in the file." Tr. 486-87. Finally, Plaintiff refers to an August 15, 2014 record by Dr. Ostrom indicating that she planned to evaluate him for ADHD. Tr. 696.

I agree with Defendant that the ALJ did not err in failing to find ADHD a severe impairment. The cited portions of the record include only subjective reports from Plaintiff, a plan to further evaluate him, and inconsistent reports from VRS. Without any psychological testing, Plaintiff fails to demonstrate that his ADHD is a medically determinable impairment.

Finally, Plaintiff cites to two records to support his contention that hepatitis C is a severe impairment. First is a February 20, 2014 chart note from Dr. Ostrom listing hepatis C as the primary encounter diagnosis, indicating that Plaintiff was interested in treatment if possible, and a plan to refer him to gastroenterology. Tr. 419. Second is an identical record, included as a duplicate in the Administrative Record. Tr. 570. Defendant notes that just one month before the February 2014 chart record, Plaintiff denied having hepatitis C. Tr. 378 (answering "No" to question of whether he had experienced medical problems, including hepatitis, as a result of drug use).

I again agree with Defendant that the ALJ did not err. There are no objective tests

demonstrating the existence of this impairment. Dr. Ostrom's record appears to be based on

Plaintiff's self-report. Additionally, Plaintiff alleges no ongoing limitations indicating that

hepatitis C causes any limitations at all.

## V. Step Five Analysis

Plaintiff argues that the ALJ erred at step five by relying on an incomplete hypothetical to

the vocational expert (VE). This argument is based on Plaintiff's previous contentions that the

ALJ omitted certain limitations from the hypothetical such as handling, fingering, and reaching

limitations established by the state agency consultant DDS physicians. Plaintiff is correct. At a

minimum, the ALJ's hypothetical to the VE omitted the handling, fingering, and reaching

limitations that the ALJ purported to endorse. This was error.[4] *Valentine*, 574 F.3d at 690

(hypothetical presented to the VE is derived from the RFC; to be valid, the hypothetical

presented to the VE must incorporate all of a plaintiff's limitations); *Nguyen v. Chater*, 100 F.3d

1462, 1466 n.3 (9th Cir. 1996) (an incomplete hypothetical cannot "constitute competent

evidence to support a finding that claimant could do the jobs set forth by the vocational expert").

Accordingly, the ALJ's step five findings are not supported by substantial evidence in the record.

## VI. Remand for Additional Proceedings or Benefit Award

In social security cases, remands may be for additional proceedings or for an award of

---

[4] Plaintiff also argues that one of the two jobs identified by the ALJ requires occasional exposure to toxic/caustic chemicals which is inconsistent with the ALJ's own RFC prohibiting exposure to workplace hazards. However, the ALJ's decision and the record indicates that "workplace hazards" addressed hazards such as machinery or heights and not those such as fumes, odors, etc. Tr. 126 (state agency consultant DDS physician opinion that Plaintiff should avoid concentrated exposure to extreme cold, vibration, and hazards such as "machinery, heights, etc.," but assessing no limitations on exposure to extreme heat, wetness, humidity, noise, or "[f]umes, odors, dusts, gases, poor ventilation, etc.").

benefits.  *E.g., Garrison*, 759 F.3d at 1019 (explaining that if "additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded[,]" but "in appropriate circumstances courts are free to reverse and remand a determination by the Commissioner with instructions to calculate and award benefits") (internal quotation marks omitted).

To determine which type of remand is appropriate, the Ninth Circuit uses a three-part test. *Id.* at 1020; *see also Treichler v. Comm'r*, 775 F.3d 1090, 1100 (2014) ("credit-as-true" rule has three steps).  First, the ALJ must fail to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion.  *Garrison*, 759 F.3d at 1020.  Second, the record must be fully developed and further administrative proceedings would serve no useful purpose. *Id.*  Third, if the case is remanded and the improperly discredited evidence is credited as true, the ALJ would be required to find the claimant disabled.  *Id.*  To remand for an award of benefits, each part must be satisfied.  *Id.; see also Treichler*, 775 F.3d at 1101 (when all three elements are met, "a case raises the 'rare circumstances' that allow us to exercise our discretion to depart from the ordinary remand rule" of remanding to the agency).

Plaintiff argues that the case should be remanded for an award of benefits.  He contends that consideration of the improperly rejected evidence of Dr. Starbird's opinion, the limitations assessed by the state agency consultant DDS physicians, the VRS opinion, the Legacy Medical Group Powell Butte letter, and Plaintiff's own testimony, establishes disability.  More specifically, Plaintiff cites to VE testimony that an inappropriate oral response for five out of every ten interactions, or an inappropriate physical response once every ten days, or even once every six months, precludes competitive employment.  Tr. 64-68.  Plaintiff contends that

consideration of that evidence makes clear that Plaintiff is incapable of working on a regular and continuing basis and thus is disabled within the statutory definition of disability.

Defendant argues that there are unresolved issues, beginning with whether there are other jobs in the national economy when Plaintiff's fingering, handling, and reaching limitations are properly incorporated into the VE hypothetical. Additionally, Defendant contends that the record does not require a finding of disability. Defendant notes that while the VE testified that repeated inappropriate responses, either oral or physical, preclude competitive employment, there is no medical evidence in the record establishing those as limitations.

I agree with Defendant. The VE did not testify in response to a hypothetical with the fingering, handling, and reaching limitations. Many of the ALJ's errors here were an outright failure to discuss certain medical evidence. And while that was error, this is not a situation where the ALJ misconstrued the record, for example, in support of rejecting a medical opinion. Moreover, the medical evidence the ALJ failed to consider does not provide specific limitations conclusive of disability and the VE's testimony was not in response to such limitations. Upon remand, the ALJ will be required to address those opinions and discern the appropriate limitations supported by those opinions, if any. At this point, the record does not allow for a determination of disability. Thus, I remand for additional proceedings.

/ / /

/ / /

/ / /

/ / /

/ / /

26 - OPINION & ORDER

CONCLUSION

The Commissioner's decision is reversed and remanded for additional proceedings.

IT IS SO ORDERED.

Dated this ____ day of _____, 2018

_____
Marco A. Hernandez
United States District Judge